**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN, ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
In re                                                                    Chapter 11
                                                                         Case No. 1-23-43343-ess

NETWORK MEDIA MANAGEMENT, INC.,

                                                    Debtor.
---------------------------------------------------------X


**DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF REORGANZIATON OF NETWORK MEDIA MANAGEMENT, INC., THE DEBTOR IN POSSESSION IN THIS CASE**


PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE FIRST AMENDED PLAN OF LIQUIDATION.  THE DEBTOR BELIEVES THAT THIS FIRST AMENDED PLAN IS IN THE BEST INTERESTS OF CREDITORS, CLAIMANTS AND INTEREST HOLDERS, AND THAT THE PLAN IS FAIR AND EQUITABLE.  THE DEBTOR URGES THAT VOTERS ACCEPT THE PLAN.


Law Office of Ronald D. Weiss, P.C.
Proposed Attorneys for the Debtor in Possession

Neil Ackerman, Esq.
734 Walt Whitman Road, Suite 203
Melville, NY 11747
Email: Neil@li-bankruptcy.com
Office: 631-271-3737

After March 1, 2024: Address is:
445 Broadhollow Road, Suite CL-10
Melville, NY 11747

## **INTRODUCTION**

Network Media Management, Inc.  (the "Debtor"), the Debtor and Debtor in Possession herein, submits this Disclosure Statement ("Disclosure Statement") pursuant to Section 1125 of the Bankruptcy Code to all its Creditors, Claimants and holders of Interests in connection with its Chapter 11 Plan of Reorganization (the "Plan") filed with this Court. Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

The Plan and Disclosure Statement contain many defined terms, identified by the use of initial (first letter) capitalization.  For the purposes of this Disclosure Statement, and to the extent not otherwise provided herein, all capitalized terms in this Disclosure Statement which are not specifically defined herein, shall have the meanings assigned to them in Article I of the Plan, entitled "Definitions."  Each definition set forth in such Article is specifically incorporated by reference into this Disclosure Statement (including that terms which are used in the Plan which are undefined in Article 1 of the Plan, shall have the meaning given for such term in the Bankruptcy Code), and all Persons and Entities holding or asserting Claims against, or Ownership Interests in, the Debtor, are encouraged to refer to Article I of the Plan in the event there are capitalized terms in this Disclosure Statement with which they are unfamiliar.

Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. The words "herein," "hereof," "hereto" and "hereunder," and other words of similar import, refer to this Disclosure Statement as a whole and not to any particular portion hereof.  The word "including" shall mean "including, without limitation."

## **PURPOSE OF THIS DISCLOSURE STATEMENT**

The purpose of this Disclosure Statement is to enable Creditors, Claimants and holders of Interests to make a reasonably informed decision in exercising their right to vote on the Plan. However, only the Holders of Allowed Claims and holders of Interests in a Class that is Impaired under the Plan are entitled to vote on the Plan.  Voting rights of individual Classes are discussed more fully below.

This Disclosure Statement is intended to provide such information as may be material, important and necessary for a reasonable investor or creditor typical of the holders of Impaired Claims and Interests to make an informed decision whether to vote in favor of or against the Plan.  This Disclosure Statement, therefore, describes the business background and operating history of the Debtor, explains certain significant events that preceded and occurred during this chapter 11 case, describes the Estate Assets, summarizes the terms of the Plan, and provides relevant financial information.  THIS DISCLOSURE STATEMENT, HOWEVER, IS NOT THE PLAN.  IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE

STATEMENT AND THE PLAN, THE PLAN WILL CONTROL. YOU ARE URGED TO REVIEW THE PLAN CAREFULLY BEFORE VOTING, AND YOU ARE FUTHER URGED TO CONSULT WITH COUNSEL IN ORDER TO UNDERSTAND THE PLAN FULLY.

## **DISCLAIMERS**

By Order dated _____, 2024, the Bankruptcy Court approved this Disclosure Statement, finding that it contained adequate information as required by Section 1125 of the Bankruptcy Code.  **APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.**

THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE EITHER A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT. THE COURT HAS NOT YET DETERMINED WHETHER THE PLAN MEETS THE LEGAL REQUIREMENTS FOR CONFIRMATION, AND THE FACT THAT THE COURT HAS APPROVED THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT OF THE PLAN BY THE COURT, OR A RECOMMENDATION THAT IT BE ACCEPTED.

THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN AND CERTAIN OTHER DOCUMENTS AND FINANCIAL INFORMATION.  WHILE IT IS BELIEVED THAT THE SUMMARIES ARE FAIR AND ACCURATE AND PROVIDE ADEQUATE INFORMATION WITH RESPECT TO THE DOCUMENTS SUMMARIZED, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS, WHICH ARE CONTROLLING IN THE EVENT OF ANY INCONSISTENCY.  EACH HOLDER OF A CLAIM AGAINST OR INTEREST IN THE DEBTOR IS URGED TO REVIEW THE PLAN AND THE EXHIBITS TO THIS DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE CASTING A BALLOT.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAWS. PERSONS OR ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN BASED UPON INFORMATION SUPPLIED BY THE DEBTOR. AS INDICATED HEREIN, THE FINANCIAL INFORMATION WITH RESPECT TO ASSETS AND LIABILITIES ARE ESTIMATES BASED UPON THE AVAILABLE

INFORMATION. THE DEBTOR, HOWEVER, CANNOT REPRESENT THAT FUTURE EVENTS MAY NOT REQUIRE CHANGES TO THE INFORMATION CONTAINED HEREIN.

NO REPRESENTATIONS CONCERNING THE PLAN, THE DEBTOR, ITS BUSINESS OPERATIONS, THE VALUE OF ITS PROPERTY OR THE VALUE OF BENEFITS OFFERED TO CLAIMANTS, CREDITORS, STOCK INTERESTS OR OTHER PARTIES IN INTEREST IN CONNECTION WITH THE PLAN ARE AUTHORIZED, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. YOU SHOULD NOT RELY ON ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH ARE CONTRARY TO THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT.

NEITHER THE PLAN NOR THIS DISCLOSURE STATEMENT HAS BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE INFORMATION CONTAINED HEREIN.  ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

YOU ARE NOT TO CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS LEGAL, TAX OR ACCOUNTING ADVICE BUT SHOULD CONSULT YOUR COUNSEL, ACCOUNTANT AND BUSINESS ADVISORS AS TO LEGAL, TAX AND ACCOUNTING MATTERS CONCERNING THE PLAN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE ANY IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF. HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD CAREFULLY READ THIS DISCLOSURE STATEMENT IN ITS ENTIRETY, INCLUDING THE PLAN, PRIOR TO VOTING ON THE PLAN.

NO REPRESENTATIONS OR INFORMATION CONCERNING OR RELATED TO THE DEBTOR, ITS PROPERTIES, THE CHAPTER 11 CASE, OR THE PLAN ARE AUTHORIZED BY THE BANKRUPTCY COURT OR THE BANKRUPTCY CODE, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. NO SOLICITATION OF VOTES TO ACCEPT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE.

FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING. THIS DISCLOSURE

STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, AND NOTHING STATED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR ON HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, BY THEIR NATURE, ARE FORWARD LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. ALL HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND FULLY CONSIDER THE RISK FACTORS SET FORTH IN SECTION E OF THIS DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

SUMMARIES OF CERTAIN PROVISIONS OF AGREEMENTS REFERRED TO IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENT, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH AGREEMENTS.

**Please be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.**

## RECOMMENDATION OF THE DEBTOR

The Debtor recommends that Claimants, Creditors and holders of Interests that are entitled to vote on the Plan, vote to accept the Plan.  The Debtor is the proponent of the Plan and believes that the Plan is the best means to maximize the value of the Debtor's Estate and to provide the greatest and quickest Distribution to Creditors on account of their Allowed Claims against the Debtor and to holders of Interests on account of their Interests in the Debtor.  The Plan, as opposed to dismissal of the case or conversion of the case to a Chapter 7 liquidation, will permit a greater Distribution to all Creditors and Interest Holders.  The treatment of Creditors, Claimants and Holders of Interests under the Plan contemplates a greater recovery than that which is likely to be achieved under other alternatives for the reorganization or liquidation of the Debtor.

## DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

**A.      Procedures and Deadlines for Completing Ballots and Voting on this Plan**

A Ballot for accepting or rejecting the Plan is enclosed for use by those Holders of Allowed Claims entitled to vote on the Plan.  By Order of this Court dated _____, 2024, holders of Claims entitled to vote on the Plan should carefully read the instructions contained on the Ballot and complete, date, sign and mail the Ballot to the address indicated on the Ballot so that it is received no later than _____, 2022.  In order for your vote to be counted, your properly completed Ballot must be actually <u>received</u> at the address or the email address indicated on the Ballot no later than _____, 2024.

**B.      Voting Requirements**

In order for the Plan to be confirmed, it must be accepted by each Class of Creditors, Claimants and holders of Interests whose Claims or Interests are "impaired" under the terms of the Plan, as that term is defined at Section 1124 of the Bankruptcy Code, unless at least one Class of Creditors and Claimants whose Claims are impaired under the Plan accepts the Plan, and the Plan is confirmed by the Bankruptcy Court under Bankruptcy Code Section 1129(b). Only "impaired" Creditors, Claimants and holders of Interests, as said terms are defined in the Plan, are entitled to vote to accept or reject the Plan.  ONLY ENTITIES WHO AFFIRMATIVELY ACT BY SENDING IN THEIR COMPLETED, EXECUTED BALLOTS SO THAT THEY ARE RECEIVED BY THE DEADLINE SET FORTH ABOVE (UNLESS OTHERWISE EXTENDED BY THE DEBTOR OR BY ORDER OF THE BANKRUPTCY COURT) SHALL HAVE THEIR VOTES COUNTED IN THE VOTE DETERMINATION.

Under the Bankruptcy Code, a class of Creditors and, Claimants whose Claims are "impaired" within the meaning of that term in the Bankruptcy Code, and whose vote is therefore being solicited hereunder, will be deemed to have accepted the Plan if acceptances of the Plan are received from Creditors or Claimants holding at least two-thirds in amount and more than one-half in number of the Allowed Claims held by the Creditors or Claimants in that Class which affirmatively act by casting a Ballot to accept or reject the Plan, on or before the above-stated deadline date. A class of holders of Interests will be deemed to have accepted the Plan if acceptances of the Plan are received from holders of Interests holding at least two-thirds in amount of the Interests which affirmatively act by casting a Ballot to accept or reject the Plan, on or before the above-stated deadline date.

1.      <u>Voting Classes</u>

In this case, unless otherwise determined by the Court. all Claimants, Creditors, and holders of Interests whose Claims and Interests are includable in Classes 1, 2, 3, 4, and 5 designated under the Plan (and which are described below) are not impaired, and their votes (by casting Ballots on the Plan on or before the above-stated deadline for casting Ballots) shall not be counted in the Vote Determination.

2.      <u>One Vote per Holder in any One Class</u>

If a holder of a Claim or Interest holds more than one Claim or Interest in any one Class, all Claims or Interests of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims voting for or against the Plan.

## C.    Procedures for Vote Tabulation

In determining whether the Plan has been accepted or rejected, any Ballot timely received that contains sufficient information to permit the identification of the Claimant or holder of an Interest, is signed by the Claimant or Interest holder or an authorized agent and is cast as an acceptance or rejection of the Plan will be counted.

The following Ballots may not be counted in determining whether the Plan has been accepted or rejected: (a) any Ballot received after the voting deadline fixed by the Bankruptcy Court; (b) any Ballot that is not signed or that contains insufficient information for the identification of the Claimant or Interest holder; (c) any Ballot timely received that indicates neither an acceptance nor a rejection of the Plan; (d) any Ballot timely received that both indicates an acceptance and a rejection of the Plan; (e) any Ballot cast by an Entity, other than the holder of a Claim that is deemed Allowed under the Plan, that is (i) a Creditor or Interest Holder that is not listed as a Creditor or Interest holder on the Debtor's Schedules or whose Claim or Interest is listed as disputed, contingent or unliquidated, and that has not timely filed a Proof of Claim or Interest with respect to the Claim or Interest being voted; or (ii) a Creditor or Holder of an Interest who has timely filed a Proof of Claim or Interest that is the subject of an objection and who has not obtained the temporary allowance of its Claim or Interest for voting purposes; and (f) any Ballot cast by a person who does not hold a Claim or Interest in the class in which it voted.

Whenever two or more Ballots are cast by the Holder of the same Claim prior to the voting deadline, the last Ballot received prior to the voting deadline will be deemed to reflect the voter's intent and thus supersede prior Ballots.

## D.    Deadline for Objection to Confirmation of the Plan

The Bankruptcy Court has fixed _____ _____, 2024 as the last date to file and serve an objection to the confirmation of the Plan.

## E.    Confirmation Hearing

The Bankruptcy Court has entered an order fixing _____, 2024. as the last date for filing objections to Confirmation of the Plan and voting to accept or reject the Plan, and the hearing on Confirmation of the Plan for _____, 2024 by telephone, video or in person as the Court deems appropriate. If the hearing shall be in person, it shall be held, unless otherwise determined by the Court, in Courtroom 3585, U.S. Bankruptcy Court, Eastern District of N.Y., Conrad B. Duberstein U.S. Courthouse, 271-C Cadman Plaza

East, Suite 1595,Brooklyn, NY 11201-1800. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment thereof, provided that unless expressly ordered by the Court, any adjournment of the Confirmation Hearing shall not serve to extend the last date to file an objection to the Plan or to vote to accept or reject the Plan.

## GENERAL FRAMEWORK OF THE PLAN AND EXPECTED RETURN TO HOLDERS OF ALLOWED CLAIMS AND INTERESTS

The following discussion provides a general overview of the Plan and is qualified in its entirety by reference to the detailed information set forth in the Plan.  This Disclosure Statement also contains a more detailed description of the Plan below.

## A.    Funding of the Plan

The funding of the Distributions to be made under this Plan will be derived from the full net proceeds of the Sale of the Florida Property, which will be contributed into the Debtor by the Debtor's sole stock Interest holder for purposes of paying Allowed Claims, and if and to the extent said net proceeds are insufficient to pay all Allowed Claims herein, the Debtor or the Reorganized Debtor shall obtain refinancing of the Real Property in whatever amount that is available and necessary to pay any remaining Allowed Claims that must be paid under the Plan.

The Florida Property is a single-family house located at 3390 Frow Avenue, Miami, Florida 33133, and is owned by Ollie Development LLC ("Ollie"), a company as to which he Principal, Judah Mizrahi, is the sole shareholder, officer, and director

The Florida Property is a new house which has been constructed in the last few months, and construction is almost finished. The work that remains to be done is set forth in the Field Progress Report annexed hereto as **Exhibit B**. The Florida Property is a 5000 square feet corner lot. The house being completed thereon is a 1650 square feet ranch, with 3 bedrooms, 2.5 bathrooms, and a 12 X 16 saltwater pool.

It is anticipated that the Florida Property will be fully completed by the end of December 2023 or mid-January 2024, and will be put up for sale through a broker who has already been contacted and agreed to act as such broker for a 6% commission, either before the end of 2023 (even if the outside landscaping is not completed by such time) , or at the very beginning of 2024. It is contemplated that the Florida Property will be able to be sold within at most six (6) months, and very likely in less time, perhaps even only two-three (2-3 months).

Attached as **Exhibit A** is a floor plan for the Florida Property. A Field Progress Report for the Florida Property is annexed hereto as **Exhibit B.**  A brochure for the Florida Property is annexed hereto as **Exhibit C.**  Comparables shall be filed within the next several days as **Exhibit D** to this Disclosure Statement.

8

The monies received by the Debtor from the Sale of the Florida Property and from any refinancing of the Real Property in Brooklyn are collectively defined in the Plan as "Funds"

**B.    Estimated Recovery by Claimants**
.

As reviewed in greater depth below, the Debtor anticipates that based on comparables, the Sale of the Florida Property shall gross at least one million six hundred thousand dollars ($1,600,000) and that the net proceeds from such Sale shall be at least one million five hundred thousand dollars ($1,500,000) which the Debtor anticipates shall be sufficient to pay all Allowed Claims, and which are being personally contributed by Mr. Mizrahi, the holder of the Debtor's sole Interest, into the Debtor, but that if and to the extent the next Sale proceeds are insufficient, the Debtor shall refinance the Real Property in Brooklyn to obtain any other or further monies required to pay all Allowed Claims in full.

**PRE-PETITION HISTORY OF THE DEBTOR AND EVENTS LEADING UP TO CHAPTER 11**

The Debtor is a New York corporation, incorporated on November 15, 2016, and the Debtor's business is to own and operate the Real Property in Brooklyn located at 1959 E. 8th Street, Brooklyn, New York 11223 (the "Brooklyn Premises").

Prior to the Filing Date, Lima One was granted a Judgment of Foreclosure and Sale by the Supreme Court of the State of New York, County of Kinds, and scheduled a foreclosure sale of the Real Property in Brooklyn, which was stayed by the Debtor's filing of its Chapter 11 Petition herein on the September 19, 2023 Filing Date.

**THE DEBTOR'S CHAPTER 11 FILING, AND EVENTS DURING THE CHAPTER 11 CASE**

The Debtor commenced this Chapter 11 Case by filing a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code, with the Bankruptcy Court for the Eastern District of New York, on September 19, 2023 (the "Filing Date"). The Debtor listed on its petition that this is a single asset real estate case.

Pursuant to Section 1107(a) and 1108 of the Bankruptcy Code, the Debtor has continued in possession of its property as a debtor-in-possession.  No trustee or examiner has been appointed in this case.

The Debtor listed in its Schedules filed with its Petition that it has one primary asset, the Real Property in Brooklyn, which was valued as being worth $1,283,300.00, based on a Zillow valuation. The Debtor's Schedules listed that it owed total debt of $790,000, all to its secured creditors, Lima One and WBL.

9

The Debtor has complied with all of its duties as a debtor and debtor-in-possession under the Bankruptcy Code throughout this Chapter 11 Case, including but not limited to: (i) the Debtor timely filed all statements, schedules, affidavits, and other documents required under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and Orders of this Court, with the Bankruptcy Court; (ii) the Debtor has provided the Office of the US Trustee with documents and information requested by that Office, as well as other and further documents which pertained to this Chapter 11 Case; (iii) the Debtor attended its initial debtor interview and the meeting of creditors under Section 341 of the Bankruptcy Code; (iv) the Debtor has attended all scheduled case management conferences before this Court to advised of the status of the Chapter 11 Case; (v) the Debtor has filed all monthly financial statements with the Court during the Chapter 11 Case, and (vi) the Debtor is current on its quarterly fees due to the Office of the US Trustee as of the date of this Disclosure Statement
.

By Order dated November 27, 2023 ("Bar Date Order"), the Bankruptcy Court fixed January 12, 2024 as the last day for Creditors other than Governmental Units to file proofs of Claims against the Debtor's estate, and March 18, 2024as the last day for Governmental Units with Pre-Petition Claims against the Debtor to file proofs of Claims, and expressly set forth that "pursuant to Bankruptcy Rule 3003(c)(2), a holder of a claim that fails to comply with this Order by timely filing a proof of claim in appropriate form shall not be treated as a creditor with respect to that claim for purposes of voting and distribution." The Debtor served notice of this Order in the form approved by the Bar Date Order (the "Bar Date Notice"), together with Official Bankruptcy Form No. 410 (the form in which proofs of claims were required to be filed by the Bar Date Order; hereinafter, the "Approved Proof of Claim Form") to all known Creditors, Governmental Units with an interest in this case, all Entities that filed a Notice of Appearance in this case, and all other known potential Creditors of the Debtor and other known parties in interest, in the manner and time required by the Bankruptcy Court's Order.

As of the date of this Disclosure Statement, a total of $1,229,911.87 secured claims have been filed, $1,694.07 Priority Claims have been filed, and $250 General Unsecured Claims have been filed.

The Debtor's proposed bankruptcy counsel in this Chapter 11 Case is Law Office of Ronald D. Weiss, P.C. ("RDW").

On December 18, 2023, the Debtor filed a Chapter 11 Plan of Reorganization and this Disclosure Statement.

On December 14, 2023, Diplomat Property Manager, LLC filed a motion for relief from the stay as to the Real Property in Brooklyn ("RFS Motion"). The RFS Motion appears to be with respect to the Secured Claim filed by Lima One, although the RFS Motion does not identify whether Diplomat Property Manager, LLC is an assignee or agent for Lima One. Section 1.43 of the Plan expressly sets forth that when Lima One is referred to in this Plan or the Disclosure Statement, this shall include Diplomat Property Manager, LLC, too.

10

The Debtor intends to seek to negotiate an amicable resolution of the RFS Motion. If no amicable resolution can be reached, the Debtor intends to contest the RFS Motion.

This summary of the Plan is qualified in its entirety by reference to the more detailed information set forth in the Plan.  This section generally describes the classification and treatment of Claims and Interests under the Plan.  You should refer to the Plan itself for the operative language with respect to the classification and treatment of your specific Claim or Interest.

<u>Effective Date of the Plan</u>

The terms "Effective Date of the Plan" or "Effective Date" are referred to often in this description as the date that the Plan will take effect and that payments are to commence to be made to holders of Allowed Claims. The terms "Effective Date of the Plan" or "Effective Date" are defined in Section 1.33 of the Plan to mean twenty (20) Business Days following the date of the Closing of the Florida Property, *provided that* if the Confirmation Order is appealed and a stay pending appeal is entered (a "**Stay Order**") within 14 days after the Confirmation Date, then the Effective Date shall mean the earlier of (i) twenty (20) Business Days following the date that the Confirmation Order becomes a Final Order, or (ii) twenty (20) Business Days following the date that the Stay Order terminates or expires or is reversed by an appellate court of competent jurisdiction.

<u>Funding of the Plan</u>

Section 7.1 of the Plan provides The funding of the Distributions to be made under this Plan will be derived from the full net proceeds of the Sale, of the Florida Property, and if and to the extent said net proceeds are insufficient to pay all Allowed Claims herein, the Debtor or the Reorganized Debtor shall obtain refinancing of the Real Property in Brooklyn and use the proceeds of such refinancing to pay any remaining Allowed Claims.

**A.    Description and Treatment of Unclassified Claims**

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the following Claims are designated as unclassified Claims under the Plan.

1.    <u>Administration Expense Claims</u>

The terms Administration Expense Claims and Administration Claims are defined in Section 1.1 of the Plan as any portion of any Unsecured Claim which is a cost, or expense of administration of the Chapter 11 Case entitled to priority treatment under Section 507(a)(2) of the Bankruptcy Code, and which is an Allowed Claim, including without limitation, (a) any actual, necessary costs and expenses of preserving the Debtor's Estate and of operating the business of the Debtor; (ii) all Professional Fees; and (iii) all fees or charges assessed against the Debtor's Estate under chapter 123 of Title 28, United States Code, including US Trustee Fees.

11

US Trustee Fees

As set forth in Section 3.4 of the Plan, all fees required to be paid by 28 U.S.C. §1930(a)(6) to the Office of the United States Trustee will accrue and will be timely paid until the Chapter 11 Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on or before the Effective Date, or as soon as practicable thereafter.

Professional Fees

Under Section 3.2 of the Plan, Professional Fees through and including the Effective Date of the Plan shall be paid on the Effective Date of the Plan. All other Claimants holding Allowed Administration Expense Claims shall be entitled to receive cash equal to 100% of the unpaid portion of their Administration Expense Claims, on or before the Effective Date, except (A) as otherwise agreed by individual holders of Allowed Administration Claims, and (B) expressly set forth herein, provided that such Administration Expense Claims are not Disputed Claims for any reason as of the Effective Date.

It is anticipated that the only holders of Administration Expenses herein shall be the UST Fees and the Professional Fees that shall be allowed and awarded by the Court for services rendered and disbursements incurred to and until the Effective Date of the Plan.

P&M was paid a Pre-Petition retainer of $20,000.00, consisting of a $18,262.00 general retainer for services and disbursements rendered in and in connection with the Debtor's Chapter 11 case, and $1,738.00 which was used by P&M to pay the Chapter 11 filing fee. As of the date of this Disclosure Statement, P&M's fees total approximately $30,000, without deducting the retainer. It is not currently known the total fees that shall be requested to be allowed to the Debtor's undersigned bankruptcy attorneys for its services and disbursements as of the Effective Date of the Plan.

Section 3.3 of the Plan provides that following the Effective Date of the Plan, any requirement that attorneys and other Professionals comply with sections 327 through 331 (or any other provision) of the Bankruptcy Code to be retained or to seek payment of compensation for services rendered or reimbursement for expenses after such date shall terminate, and the Debtor may employ and shall pay all attorneys and other Professionals upon presentation of invoices or bills by such Professionals to the Debtor without any application or notice to, action by, or order or approval of the Bankruptcy Court or any other Person or Entity.

2.  Allowed Priority Tax Claims

Allowed Priority Tax Claims are defined at Section 1.6 of the Plan to mean that portion of any Governmental Unit's (a) Allowed Unsecured Claim for taxes, which is entitled to priority treatment pursuant to  §§ 502(i) or 507(a)(8) of the Bankruptcy Code, and (b) Allowed Secured

Claim for taxes which would otherwise meet the description of an unsecured claim under section 507(a)(8), but for the secured status of that Claim, regardless of whether (i) such Allowed Priority Tax Claim arises Pre-Petition or Post-Petition, or (ii) arises or is deemed to have arisen before or after the Confirmation Date or the Effective Date. (The portion of the definition respecting Allowed Secured Claims, accords with Section 1129(a)(9)(D) of the Bankruptcy Code.)

Under Section 3.5 of the Plan, except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall be paid, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, in full in Cash on or before the Effective Date of the Plan.

Section 3.5 of the Plan further provides that (a) Allowed Priority Tax Claims that were Disputed Claims at the time of the aforementioned Distributions, which thereafter become Allowed Priority Tax Claims by Final Order(s), shall be paid as set forth above, within five (5) Business Days following the date that each such Order allowing such Claim as a Priority Tax Claim becomes a Final Order, and (b) to the extent that any holder of an Allowed Priority Tax Claim has a Lien of record against the Debtor or the Real Property, such holder shall, within no more than twenty (20) business days following receipt and clearance of final payment of its Allowed Priority Tax Claim, file all documents that are necessary and appropriate with the Secretary of State of New York and with the Kings County Clerk's office to evidence the satisfaction and cancellation of such Lien, and deliver copies of all such filed documents to the Debtor and its undersigned attorney within twenty (20) days thereafter.

As of the date hereof, only the New York State Department of Finance has filed a Priority Tax Claim, in the sum of $1,694.07.

## B.    Description and Treatment of Classified Claims

The treatment of Claims classified by Article IV of the Plan is generally discussed below. You should refer to the Plan for the operative language governing the treatment of your particular Claim or Interest.

(a)    <u>Class 1 – Allowed Secured Claim of Lima One: Unimpaired under the Plan</u>

Section 6.1 of the Plan provides for the treatment of the Allowed Secured Claim of Lima One, which filed a Secured Claim herein for $984,544.82, but whose RFS Motion set forth that its Secured Claim was $1,172,587.39, as follows:

Lima Bank shall receive payment of Cash of 100% of Lima Bank's Allowed Secured Claim, or such portion of Lima One's Secured Claim that is allowed on the Effective Date of the Plan, on the Effective Date of the Plan.

If and to the extent that any portion of Lima One's Secured Claim is a Disputed Claim on the Effective Date of the Plan, then Lima One shall receive payment of Cash of 100% of the Disputed Claim which is thereafter allowed as an Allowed Secured Claim by (a) Final Order(s), within fifteen (15) Business Days following the date of the Final Order(s).

Within fifteen (15) Business Days following the date that that Lima One receives full payment of its Allowed Secured Claim, Lima One shall execute and deliver to the Debtor's attorney, a general release of the Debtor, a cancellation of its Commercial Mortgage, Security Agreement, Fixture Filing and Assignment of Leases and Rents in form, and a satisfaction of any and all Guarantees it has with respect to this Debt, a satisfaction of its judgment of foreclosure with respect to its mortgage, a cancellation of any notice of pendency which was filed in respect of the Real Property, a notice of discontinuance of any action in any New York State Court against or otherwise pertaining to the Debtor, and any and all  instruments or other documents that it filed to record or otherwise claim a lien on the Real Property or the Debtor's other assets, in recordable form that is satisfactory to the Debtor.

(b)    Class 2 – Allowed Secured Claim of WBL: Unimpaired under the Plan

Section 6.2 of the Plan provides for the treatment of the Allowed Secured Claim of WBL, which filed a Secured Claim herein for $242,698.15, as follows:

WBL shall receive payment of Cash of 100% of WBL's Allowed Secured Claim, or such portion of WBL's Secured Claim that is allowed on the Effective Date of the Plan, on the Effective Date of the Plan.

If and to the extent that any portion of WBL's Secured Claim is a Disputed Claim on the Effective Date of the Plan, then WBL shall receive payment of Cash of 100% of the Disputed Claim which is thereafter allowed as an Allowed Secured Claim by (a) Final Order(s), within fifteen (15) Business Days following the date of the Final Order(s).

Within fifteen (15) Business Days following the date that that WBL receives full payment of its Allowed Secured Claim, WBL shall execute and deliver to the Debtor's attorney, a general release of the Debtor, a cancellation of its Commercial Mortgage, Security Agreement, Fixture Filing and Assignment of Leases and Rents in form, and a satisfaction of any and all Guarantees it has with respect to this Debt, a satisfaction of its judgment of foreclosure with respect to this mortgage, a cancellation of any notice of pendency which was filed in respect of the Real Property, a notice of discontinuance of any action in any New York State Court against or otherwise pertaining to the Debtor, and any and all instruments or other documents that it filed to record or otherwise claim a lien on the Real Property or the Debtor's other assets, in recordable form that is satisfactory to the Debtor.

14

    (c)    <u>Class 3 - Secured Claim filed by NYC Department of Finance -RPT Taxes – unimpaired under the Plan</u>

Class 3 consists of the Secured Claim filed by NYC Department of Finance – RPT Taxes, which to date, has been filed for the sum of $2,668.90 due as of October 1, 2023, for the first two periods of 2024. Under Section 6.3 of the Plan, NYC Department of Finance -RPT Taxes shall receive payment of Cash of 100% of all real estate taxes due and owing as of the Effective Date of the Plan, on the Effective Date of the Plan

    (d)    <u>Class 4 - Allowed General Unsecured Claims – unimpaired under the Plan</u>

Class 4 consists of all Allowed General Unsecured Claims, which is defined in Section 1.4 of the Plan to mean that portion of an Allowed Unsecured Claim which is not (a) an Allowed Administration Claim, or (b) an Allowed Priority Tax Claim.

Section 6.4 of the Plan provides that All holders of all Allowed General Unsecured Claims against the Debtor shall receive payment of Cash of 100% of all such holder's Allowed General Unsecured Claim on the Effective Date of the Plan.

Claims in Class 4 that were Disputed Claims on the Effective Date of the Plan, which thereafter become Allowed General Unsecured Claims by Final Order(s), shall be paid as set forth above, within fifteen (15) Business Days following the date that each such Order allowing such Claim as an Allowed General Unsecured Laim becomes a Final Order.

To date, only $250.00 of General Unsecured Claims have been filed, by the New York State Department of Finance.

    (e)    <u>Class 6 - all Interests in the Debtor</u>

Class 6 consists of all Interests in the Debtor. Section 1.41 of the Plan defines Interest to mean an equity security interest in and to the Debtor, as that term is defined in Section 101 of the Bankruptcy Code.

The list of Equity Security Holders filed by the Debtor with its Petition lists that all of the Debtor's stock is owned by Judah Mizrahi.

Section 6.5 of the Debtor's Plan provides that the Debtor's Principal shall retain and continue to own his Stock Interest that he owns in the Debtor, in the Reorganized Debtor after Confirmation.

There shall be no dividends declared or distributed pending the full and final payment of all sums required under this Plan to Claimants and Creditors.

15

Section 7.2 of the Plan sets forth that the Reorganized Debtor will continue to be governed by the Debtor's board of directors, consisting of Judah Mizrahi. Mr. Mizrahi shall not receive any compensation from the Debtor for his services until such time as all Allowed Claims are paid in full, and that the charter of the Reorganized Debtor shall be deemed to be amended to prohibit the issuance of nonvoting equity securities.

## C.    **Description of Certain Other Significant Plan Provisions**

### 1.    Effect of Confirmation

As set forth in Section 8.1 of the Plan, except for (i) payment obligations imposed by the Plan; (ii) debts of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c); or (iii) debts of a kind specified in § 1141(d)(6)(B), Confirmation of this Plan (notwithstanding whether the Order confirming the Plan becomes a Final Order) shall in accordance with Section 1141 of the Bankruptcy Code be deemed to have discharged and released the Debtor and its Estate and Property, and the Reorganized Debtor, from any Claim that arose or that may be deemed to have arisen at any time at or before the Confirmation Date, whether or not:

  a.    a proof of the Claim is filed or deemed to be filed under Sections 501 and/or 1111(a) of the Bankruptcy Code;

  b.    such Claim is allowed under Section 502 of the Bankruptcy Code; or

  (c)   the holder of any Claim has accepted the Plan.

Section 8.2 of the Plan provides that upon and following Confirmation, all Creditors, Claimants, and other Persons and Entities shall be enjoined and prevented from taking any action of any kind or nature, including instituting or continuing any judicial, administrative, or action or proceeding, against the Reorganized Debtor to recover or collect on any pre-Confirmation Claims against the Debtor, or for any reason, under any theory of law or fact, other than and/or apart from receiving the treatment provided for the Claim held by such Creditor, Claimant, Person or Entity under the provisions of this Plan, until and unless there is a default, in which event the provisions of Article IX of this Plan shall govern and control.

Section 8.3 of the Plan provides that in accordance with Section 1141 of the Bankruptcy Code, Confirmation of the Plan (notwithstanding whether the Order for the Confirmation becomes a Final Order) shall automatically re-vest the Reorganized Debtor with all of the property of the Debtor's Estate, and said Property shall thereafter be free and clear except as provided in this Plan regarding the payments due to be made on Allowed Claims of Creditors, Claimants, and all other Entities; and except as otherwise expressly set forth in the Confirmation Order or in other Order of the Bankruptcy Court, no further Order thereafter shall be required from the Bankruptcy Court nor shall any further notice be provided to Creditors, Claimants, or any other Entities having or claiming to have any Claim against the Debtor, the Debtor's Estate, and/or the Reorganized Debtor, with respect to any actions which the Debtor sees fit to take relative to such property, in the Debtor's sole and unfettered discretion except as otherwise provided in this Plan.

Section 8.4 of the Plan provides that the Distributions accorded under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever (including without limitation, for any interest otherwise accrued or accruing thereon from and after the Filing Date to and until the Confirmation Date, in consonance with Section 502[b][2] of the Bankruptcy Code, and except as provided in Section 506[b] of the Bankruptcy Code) against the Debtor, and except as otherwise expressly provided herein, upon the Confirmation Date, all Claims against the Debtor and the Debtor's Estates, shall be satisfied, discharged, and released in full in consideration of the distributions on account of such Claims under this Plan; and **all** Claimants shall be absolutely barred and precluded from asserting against the Debtor, the Reorganized Debtor or any of said Entities' respective assets or properties, any other, further, or alternative Claim based on any act or omission, transaction, or other activity of any kind or nature that occurred on or prior to the Filing Date, the Confirmation Date and/or the Effective Date of the Plan, other than as set forth in this Plan.

Section 8.5 of the Plan provides that notwithstanding the Confirmation of the Plan, the Reorganized Debtor specifically shall, pursuant to Sections 105(a) and 1123(a)(6) of the Bankruptcy Code, retain each and all of the special rights and powers which are granted in and under the Bankruptcy Code to Debtors in Possession, expressly including but not limited to the right and power to object to Claims pursuant to 11 U.S.C. §§ 502 and 506(b), Bankruptcy Rule 3007 and 3012, and any other applicable law, rule or regulation; the right to seek to equitably subordinate or void Claims and/or alleged security interests under §510 of the Bankruptcy Code; the right and power under §§544, 545, 546, 547, 548, 549, and/or 550 of the Bankruptcy Code to pursue and prosecute actions to avoid and recover preferences or fraudulent conveyances, avoid the fixing of a statutory liens on property of the Debtor, its Estate, or the Reorganized Debtor, and to pursue claims relating to post-Filing Date transactions of the Code; and all of such rights and remedies are hereby preserved for the benefit of the Reorganized Debtor. Prosecution and settlement of such claims shall be the exclusive right and responsibility of the Debtor, and all proceeds from such actions shall vest in and be the property of the Reorganized Debtor, to be distributed as set forth herein.

2. <u>Retention of Jurisdiction by the Bankruptcy Court</u>

Section 10.1 of the Plan provides that notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Bankruptcy Court will retain exclusive jurisdiction to the full extent permitted by law including, without limitation, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, oversecured or unsecured status of any Claim or Interest Allowed or not otherwise Allowed under the Plan (as well as the amount of such Claim to be Allowed), any request for payment of any Administration Expense Claim, reasonableness of any claim for interest or for attorneys' fees and whether such interest and/or attorneys' fees were actually incurred, and the resolution of any objections to the allowance or priority of all or any portion of any Claims or Interests;

(b)    hear and determine all applications for compensation and reimbursement of expenses of Professionals for services through and including the Effective Date of the Plan, under the Plan or under Sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(c)    hear and determine all matters with respect to the assumption or rejection of any Executory Contract (including unexpired leases) to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature or amount of any required cure of the liquidation or allowance of any Claims arising therefrom;

(d)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters, or otherwise arising out of, under or related to the Chapter 11 Case;

(e)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, this Disclosure Statement or the Confirmation Order;

(f)    hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

18

(g)     consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(i)     enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(j)     hear and determine any matters arising in connection with or relating to the Plan, this Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, this Disclosure Statement, or the Confirmation Order;

(k)     enforce all orders, judgments, injunctions, releases, exculpations, indemnification and rulings entered in connection with the Chapter 11 Case;

(l)     except as otherwise limited herein, recover all Estate assets, wherever located;

(m)    hear and determine all avoidance actions and other causes of action;

(n)     hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(o)     modify the Plan at the request of the Debtor and as provided by applicable law;

(p)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(q)     enter a Final Decree closing the Chapter 11 Case.

3.   Unclaimed or Undeliverable Distributions

Section 6.12 of the Plan provides as follows:

(a)      Unclaimed and undeliverable Distributions shall include: (i) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (ii) checks (and the funds represented thereby) which have been issued to the holder of an Allowed Claim or Allowed Interest in accordance with the Plan but which have not been presented for payment within ninety (90) days after the date of such checks, and (iii) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a complete or correct mailing address. If any Distribution made on account of an Allowed Claim or Stock Interest is returned to the Debtor as undeliverable, no further Distributions shall be made to such Creditor or Interest holder unless and until the Debtor is notified in writing of such Creditor's or Interest Holder's then-current address. Subject to paragraph (b) below, undeliverable Distributions shall remain in the possession of the Debtor until such time as such Distribution becomes deliverable. Undeliverable Distributions shall not be entitled to any interest or other accruals of any kind. Nothing in the Plan shall require the Debtor to make more than a reasonable attempt to locate any holder of an Allowed Claim or Allowed Interest.

(b)      In the event that any Distribution on account of any Allowed Claim or Allowed Stock Interest remains undeliverable or unclaimed for a period of ninety (90) days after the date of the check (the "Claiming Period"), the entire unpaid Allowed Claim or Allowed Interest upon which such Distribution was issued shall, on the first Business Day after expiration of the Claiming Period, be deemed expunged and reduced to zero ($0) dollars. The proceeds of all unclaimed and undeliverable Distributions shall, after the expiration of the Claiming Period, be distributed as provided under the Plan.

4.     <u>Late Claims</u>

Section 6.13 of the Plan provides that Except as otherwise expressly provided in this Plan, any Claim filed or asserted against the Debtor or Reorganized Debtor after the Claim Bar Date shall be unenforceable unless the Claimant has been granted an extension of time to file a Claim and/or to file a late-filed Claim by a Final Order of the Bankruptcy Court, and such Entity shall not be treated as a Creditor or Claimant for the purposes of voting or distributions with respect to the Plan. Unless otherwise expressly ordered by the Bankruptcy Court, any such late-filed Claim shall not be entered on the official claims register, shall be deemed Disallowed and expunged, the Claimant shall receive no distribution under the Plan or from the Debtor, or Reorganized Debtor, the Claimant's asserted Claim and the Claimant shall be deemed bound by this Plan and shall be forever barred for asserting its alleged Claim against the Debtor, the Reorganized Debtor, or any other Person or Entity, including under any Guarantee.

5.     <u>Events of Default under the Plan, and Cure of Default</u>

Section 9.1 of the Plan provides that the following shall be Events of Default under the Plan: if the Debtor fails to remit any payment provided for in this Plan, except if (i) such payment or payments is or may be postponed pursuant to terms and conditions provided under the Plan, or (ii) the Debtor sends a payment or Distribution in conformance with Section 12.6 of the Plan, but said payment is not received or collected by the Claimant, Creditor, or Entity for any reasons outside of the Debtor's control, including without limitation, as a result of the failure by said Claimant, Creditor, or Entity to comply with the provisions of this Plan. In accordance with Section 6.12 of the Plan, such Claimants may be deemed to have irrevocably forfeited any and all further rights to payments or distribution under this Plan and/or any other or further rights against the Debtor, the Reorganized Debtor, or any other Person or Entity, including under Guarantees of Debts owed, or asserted to be owed, by the Debtor to any Creditor or Claimant. .

Section 9.2 of the Plan provides that in the event a Creditor, Claimant, or Entity claims a default by the Debtor under the terms of the Plan, such Creditor, Claimant, or Entity shall refrain from any action in respect of such claimed default until it first provides written notice of such default to the Debtor and the Debtor's undersigned attorney herein, in a manner conforming with Section 12.5 of the Plan. Thereafter, the Debtor shall have fifteen (15) days from its receipt of such notice to cure such default or to initiate a proceeding before any appropriate forum including without limitation the Bankruptcy Court in the event of any dispute or controversy as to whether any default actually occurred, and during said fifteen (15) days, or to and until twenty (20) days following the date that a Final Order is issued which resolves any controversy or dispute as to whether a default actually occurred, whichever is later, no Claimant shall take any action to terminate this Plan or otherwise against the Debtor. If the claimed default is cured by the Debtor within such time periods, the complaining Creditor, Claimant, or Entity, shall fully accept such cure as if there had been no claimed default, and shall not present or argue any other or further claims against the Debtor in respect of the claimed default. In the event that the default is not timely cured, the rights of the complaining Creditor, Claimant, or Entity as against the Debtor, shall be limited to initiating a proper proceeding against the Debtor in a court of appropriate jurisdiction to recover the remaining Distribution owed under this Plan to such complaining Creditor, Claimant, Person, or Entity (which shall be fully binding upon all parties), **unless** there is a subsequent bankruptcy filing or a conversion of the case herein to chapter 7, in which event the entire amount Allowed herein less any Distributions actually received thereon, shall be entitled to be claimed by the Creditor, Claimant, Person, or Entity in the new or converted case.

6.      Corporate Governance After Confirmation

Section 7.2 of the Plan provides that after the Confirmation Date, the Debtor's directors and officers shall remain the directors and officers of the Reorganized Debtor. The Reorganized Debtor will continue to be governed by the Debtor's board of directors, consisting of Judah Mizrahi, for no compensation until all Allowed Claims are paid in full under the terms of the Plan. .

7.      Disbursing Agent of Distributions under the Plan:

21

Section 7.3 of the Plan sets forth that the Debtor or Reorganized Debtor, or such other Person(s) as may be approved by the Debtor or Reorganized Debtor, shall act as Disbursing Agent(s) under the Plan. Any such Disbursing Agent may, with the prior approval of the Debtor or Reorganized Debtor, employ or contract with other Persons to assist in or to perform the Distributions required under this Plan.

   8.     <u>Votes Solicited in Good Faith</u>:

Section 7.4 of the Plan provides that the Debtor has, and upon Confirmation of the Plan will be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. The Debtor (and each of its agents, attorneys, directors, officers, members, employees, and advisors,) has participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and therefore has not been, and will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the distributions made under the Plan.

   9.     <u>Post-Confirmation Quarterly Reports and Fees</u>:

Section 7.5 of the Plan requires the Reorganized Debtor to file and serve on the US Trustee quarterly post-Confirmation reports until the entry of a final decree dismissing this Chapter 11 Case or conversion of the case to Chapter 7.  The Reorganized Debtor shall also pay all statutory fees due and payable, under 28 U.S.C. § 1930(a)(6) on all disbursements, including Disbursements inside and outside of the Plan, until the entry of a final decree dismissing this Chapter 11 Case or conversion of the case to Chapter 7.

   10.    <u>Objections to Claims</u>

Sections 6.10 of the Plan sets forth that Objections to Claims (including requests for reclassification of Claims) shall be filed with the Bankruptcy Court and served upon each holder of each Claim to which objections are being made on or before the thirty (30) Business Days after the Confirmation Date becomes a Final Order, unless (a) such time is extended by the Bankruptcy Court by a Final Order issued on or before said final date for objections to Claims, or (b) there is a Stay Order (as that term is defined in Section 1.38 of the Plan), within 14 days after the Confirmation Date, in which case the last date to object to Claims shall be 30 (30) Business Days following the date that the Stay Order terminates or expires or is reversed by an appellate court of competent jurisdiction.
   .

**D.     <u>Miscellaneous Provisions</u>**

The Plan contains a number of other miscellaneous provisions not separately discussed in this Disclosure Statement, including provisions for modification of the Plan pursuant to the Bankruptcy Code.  Parties should review the Plan itself for details of such provisions.

## FEASIBILITY AND RISK FACTORS

**A.      General Feasibility Analysis**

Pursuant to Section 1129(a)(11) of the Bankruptcy Code, one of the requirements for confirmation of a chapter 11 plan is a determination by the Bankruptcy Court that the plan is feasible -- that is, that confirmation of the plan is not likely to be followed by liquidation or by the need for a further financial restructuring, unless same is specifically provided for in the Plan. Since the Debtor's assets are all being liquidated and the Funds from same are being used to make the distributions under the Plan, there is little question about the feasibility of the Plan.

**B.      Risk Factors**

As with any plan or other financial transaction, there are certain risk factors which must be considered. It should be noted that all risk factors cannot be anticipated, and that some events will develop in ways that were not foreseen, and that many or all of the assumptions that have been used in connection with this Disclosure Statement and the Plan will not be realized exactly as assumed. Some or all of such variations may be material. While every effort has been made to be reasonable in this regard, there can be no assurance that subsequent events will bear out the analysis set forth herein. Under the Plan, some of the principal risks that Holders of Claims and Interests should be aware of, in the view of the Debtor, are as follows:

   a.   The amounts estimated for Administration Expenses, such as Professional Fees or the US Trustee fees due until this case is closed, may differ significantly from the estimates provided herein. Accordingly, the amount and timing of the Distributions that will ultimately be received by any particular Holder of an Allowed Claim may be materially and adversely affected should the estimates be exceeded as to any Administration Expense;

   b.   The amount estimated as net funds form the Sale of the Florida Property which will be personally contributed by Judah Mizrahi into the Debtor could be more or less than $1.5 million dollars. a

The foregoing risks are inherent in any liquidation, including if the case is converted and there is a chapter 7 trustee.

## ALTERNATIVES TO THE PLAN

The Bankruptcy Code requires as a condition to Confirmation that Creditors receive, on account of their claims, at least as much as they would receive if the case were a case under chapter 7 of the Bankruptcy Code.

Because the Plan provides for the Distribution of 100% to all known holders of Allowed Claims, the Debtor believes that the Plan clearly meets this test. In fact, the distribution under this Plan will, in the Debtor's opinion, clearly exceed the amount that holders of Allowed Claims would obtain in a chapter 7 liquidation. However, if the Plan is not confirmed or consummated, the alternatives would include: (i) a conversion of the case to a liquidation case under chapter 7 of the Bankruptcy Code; or (ii) confirmation of an alternative chapter 11 plan. It is also possible that the Chapter 11 Case could be dismissed.

1. Liquidation Under Chapter 7

In evaluating the Plan, the Debtor has considered the alternative of a liquidation of its assets under chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan serves to: (i) expedite Distributions to Holders of Allowed Claims; and (ii) maximize the potential recovery from the Insurance Claim, and (iii) significantly minimize potential administrative expenses in a chapter 7 case which could dilute the amount of Funds available for Distribution to Holders of Allowed Claims.

In a chapter 7 case, an independent trustee would be appointed to liquidate the Debtor's assets. An interim trustee would be chosen by the United States Trustee's Office for the Eastern District of New York. The Chapter 7 trustee would make all of his or her own decisions with respect to the liquidation of the Estate, the hiring of professionals, the pursuit of any claims or litigation, the payment of or objection to Claims, and the Distribution of any ultimate dividend. The Chapter 7 trustee would be paid pursuant to the provisions of Section 326(a) of the Bankruptcy Code, although, in certain circumstances, a chapter 7 trustee can apply to the Bankruptcy Court for a different type of compensation. These fees and costs would be paid prior to payment of chapter 11 administrative expenses and prior to payment of General Unsecured Claims.  Pursuant to the Bankruptcy Code, in a chapter 11 case, Creditors whose Allowed Claims are Impaired are entitled to vote to approve the procedure by which the Estate will be liquidated and the way the Estate assets will be distributed. This right to vote allows such Creditors to examine the Plan and understand the potential recovery for Creditors as well as the risks. On the other hand, in a chapter 7 case, the chapter 7 trustee makes all of the decisions as tempered by the Bankruptcy Code regarding liquidation and distribution of estate assets.

The Debtor believes that the Plan serves to expedite Distributions to Holders of Allowed Claims and avoids the potential additional expenses that would be incurred if this Chapter 11 Case was converted to a case under chapter 7 of the Bankruptcy Code. Conversion of this Chapter 11 Case to chapter 7 would result in additional delays in payment of Allowed Claims by requiring, among other things, the appointment of a new fiduciary, a meeting of creditors pursuant to section 341(a) of the Bankruptcy Code, and a new notice deadline for filing claims. Further, the Plan avoids the additional costs and expenses to the liquidation and Distribution process incident to the liquidation of the Property in Chapter 7.  A chapter 7 Trustee is entitled to reasonable compensation, upon application to the Bankruptcy Court, under the provisions of the Bankruptcy Code.  In addition, a chapter 7 Trustee could retain his own professionals including but not limited to attorneys and accountants. All the fees and expenses of a chapter 7 trustee and

his or her professionals, and all allowed Professional Fees in the Chapter 11 Case, are entitled to priority over all Impaired Classes of Creditors and would substantially reduce the Distribution to Allowed Claimants. Due to the foregoing, the Debtor believes that there would be no benefit to the Estate or Creditors by conversion to chapter 7.

The Debtor believes that a chapter 7 liquidation would result in substantially reduced Distribution to the Holders of General Unsecured Claims. First, as stated above, the Real Property in Brooklyn will likely sell for much less than the aggregate amount of Allowed Claims in this case. Second, the chapter 7 Administration Expenses that have priority over the Claims of General Unsecured Creditors will increase substantially by the addition of the professional fees and commissions of a chapter 7 trustee and an auctioneer or broker retained by the chapter 7 trustee. Finally, Distributions will be delayed while the trustee performs his or her duties. Accordingly, any chapter 7 liquidation will directly affect the Distributions to Holders of Allowed Claims and Interests negatively.

## REQUIREMENTS FOR CONFIRMATION

In order to confirm the Plan, Section 1129 of the Bankruptcy Code requires that the Bankruptcy Court make a series of findings concerning the Plan and the Debtor, including:

    a. that the Plan has classified Claims and Interests in a permissible manner;

    b. that the Plan complies with the applicable provisions of the Bankruptcy Code;

    c. that the Debtor has complied with applicable provisions of the Bankruptcy Code;

    d. that the Debtor has proposed its Plan in good faith and not by any means forbidden by law;

    e. that the disclosures required by Section 1125 of the Bankruptcy Code have been made, and that the Court has approved the Disclosure Statement as containing information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case,;

    f. that the Plan has been accepted by the requisite votes of Creditors, except to the extent that Confirmation is available under Section 1129(b) of the Bankruptcy Code;

    g. that the Plan is feasible and that Confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor;

    h. that the Plan is in the "best interests" of all Holders of Claims or Interests in an Impaired Class by providing the such Holders on account of their Claims or Interests property of a value, as of the Effective Date, that is not less than the amount that any such Holder would receive or retain in a chapter 7 liquidation, unless each Holder of a Claim or Interest in such Classes accepts the Plan;

      i.   that all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on Confirmation, have been paid or the Plan provides for the payment of such fees on the Effective Date.

Section 1129(b) of the Bankruptcy Code permits the Bankruptcy Court to confirm a plan notwithstanding the failure to obtain the requisite acceptance of the plan of each Impaired Class of Claims or Interests, as long as one Impaired Class of Claims accepts the plan. This procedure is known as "cramdown". The Plan may be confirmed over the non-acceptance of an Impaired Class if the other Confirmation requirements set forth in Section 1129(a) (other than paragraph (8) are met), the Plan does not unfairly discriminate with respect to such Class, and (i) the members of the non-accepting Class receive full payment of their Allowed Claim or Allowed Interests or (ii) the holders of Claims or Interests in such Class are to receive less than full payment, but no Class junior to the non-accepting Impaired Class receives or retains any property under the Plan.

As set forth in Section 12.10 of the Plan, if the applicable requirements of Section 1129(a) of the Bankruptcy Code, other the failure to obtain the requisite acceptance of the Plan of each Impaired Class of Claims or Interests, are met with respect to the Plan, the Debtor will request that the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code.

## TAX CONSEQUENCES

**THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN THAT ARE DESCRIBED HEREIN AND THE STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN THAT ARE NOT ADDRESSED HEREIN, ARE COMPLEX AND, IN SOME CASES, UNCERTAIN.  SUCH CONSEQUENCES  MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH CLAIMANT OR INTEREST HOLDER WHICH MAY RESULT FROM THE CONFIRMATION OF THE PLAN. CREDITORS SHOULD CONSULT WITH THEIR OWN TAX ADVISOR CONCERNING ANY SUCH TAX RELATED IMPLICATIONS, INCLUDING BUT NOT LIMITED TO (A) ANY DEDUCTIONS WHICH MAY BE APPLICABLE TO THEM AS BAD DEBT DEDUCTIONS, OR (B) INCOME TAX IMPLICATIONS BASED UPON FORGIVENESS OF DEBT, IF APPLICABLE, BASED UPON THE PROVISIONS OF THE DEBTOR'S PLAN. TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE OR ANY OTHER APPLICABLE TAX LAW, RULE OR  REGULATION, (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY**

**THE DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS SHOULD SEEK ADVICE BASED UPON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

## CONCLUSION AND RECOMMENDATION

The Debtor submits that the Plan complies in all respects with chapter 11 of the Bankruptcy Code, is fair and equitable, and provides for a greater, more immediate and certain return than would likely be achieved under any other reasonable alternative.

Accordingly, the Debtor urges all Creditors to affirmatively vote to accept the Plan.

Dated:  Brooklyn, NY                          Network Media Management, Inc.
        December 18, 2023                     Debtor and Debtor-In-Possession herein


                            By:      */s/ Judah Mizrahi*
                                     Judah Mizrahi, President


Law Office of Ronald D. Weiss, P.C.
Attorneys for the Debtor in Possession

By: */s/ Neil Ackerman*
        Neil Ackerman, Esq.
        734 Walt Whitman Road, Suite 203
        Melville, NY 11747
        Office: 631-271-3737
        Direct Tel. No.: 516-425-5365
        Email: Neil@li-bankruptcy.com

        After March 1, 2024: Address is:
        **445 Broadhollow Road, Suite CL-10**
        **Melville, NY 11747**